*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| KEVIN W. LINDBO, | ) |
| | ) Supreme Court No. S-16054 |
| Appellant, | ) |
| | ) Superior Court No. 1KE-14-00128 CI |
| v. | ) |
| | ) O P I N I O N |
| COLASKA, INC., d/b/a SECON and | ) |
| MATTHEW LINDLEY, | ) No. 7231 – March 23, 2018 |
| | ) |
| Appellees. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Ketchikan, Trevor Stephens, Judge.

Appearances: Paul A. Clark, Clark Legal Services, Jersey City, New Jersey, for Appellant. Gregory R. Henrikson, Walker & Eakes, Anchorage, for Appellee Colaska, Inc. Daniel T. Quinn, Richmond & Quinn, Anchorage, for Appellee Matthew Lindley.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Carney, Justice, not participating.]

WINFREE, Justice.

## I.    INTRODUCTION

An asphalt plant operator threw a can at a driver waiting outside his truck to get his attention, striking him in the back. The driver brought negligence and battery claims against the plant operator and his employer, but was awarded minimal damages after trial. The driver now appeals several of the superior court's decisions regarding

jury instructions, evidentiary rulings, and pre- and post-trial orders. But because we find no error in the superior court's decisions, we affirm the judgment.

## II.    FACTS AND PROCEEDINGS

In August 2012 Kevin Lindbo was working as a truck driver for Karlson and Karlson, Inc. (K&K), delivering asphalt from Colaska Inc.'s plant to a paving project. On August 21 Lindbo drove to Colaska's plant, stopped, and stepped out of his truck, turning his back to the machinery. The plant operator, Matthew Lindley, gestured and yelled at Lindbo, trying to direct him to drive to the asphalt loading area. But unable to hear Lindley amidst the loud noises at the plant, Lindbo was unresponsive. Lindley then picked up a can and threw it in Lindbo's direction, apparently attempting to get his attention. The can struck Lindbo in the lower back. Lindbo dropped to his hands and knees and soon after went to an emergency room for medical treatment.

In March 2014 Lindbo filed suit against Colaska and Lindley, alleging the blow from the can caused him ongoing pain requiring medical attention. Lindbo claimed that Lindley's actions constituted battery and negligence and that Colaska was vicariously liable for Lindley's actions. Lindbo sought punitive damages, and he sought compensatory damages for past and future medical expenses, past and future loss of income, past and future pain and suffering, mental anguish, loss of enjoyment of life, physical impairment, and inconvenience.

A five-day jury trial took place in June 2015. The jury found that Lindley had not committed a battery, but that he had been negligent and that his negligence was a substantial factor in causing Lindbo harm. The jury awarded Lindbo just over $2,500 in compensatory damages.

Lindbo appeals, contending that the superior court erred by: (1) failing to give a spoliation jury instruction on Colaska's failure to preserve the can that hit him; (2) allowing a witness to refresh his recollection with late-discovered documents and

subsequently admitting the documents into evidence; (3) admitting Lindbo's past medical records, including a history of prescription drug use, and evidence of late child support payments; (4) admitting evidence of Lindbo's prior conviction for attempted vehicle theft; (5) failing to correct improper "vouching" during closing arguments; and (6) denying his request for a new trial.

## III.    STANDARD OF REVIEW

"The correctness of jury instructions is reviewed de novo."[1] But the failure to give a jury instruction is grounds for reversal only if it caused prejudice.[2] "In evaluating whether there has been prejudicial error with regard to jury instructions, we put ourselves in the position of the jurors and 'determine whether the error probably affected their judgment.' "[3] Failure to instruct the jury on a particular ground when no party requested that instruction is reviewed for plain error.[4] Plain error exists when "a correct instruction would have likely altered the result."[5]

---

[1]    *Ayuluk v. Red Oaks Assisted Living, Inc.*, 201 P.3d 1183, 1197 n.30 (Alaska 2009) (citing *Parnell v. Peak Oilfield Serv. Co.*, 174 P.3d 757, 765 (Alaska 2007)).

[2]    *Todeschi v. Sumitomo Metal Mining Pogo, LLC*, 394 P.3d 562, 570 (Alaska 2017).

[3]    *Id.* at 570-71 (quoting *City of Hooper Bay v. Bunyan*, 359 P.3d 972, 978 (Alaska 2015)).

[4]    *Reust v. Alaska Petroleum Contractors, Inc.*, 127 P.3d 807, 816 (Alaska 2005).

[5]    *Id.* (quoting *Manes v. Coats*, 941 P.2d 120, 125 (Alaska 1997)).

"Rulings on discovery and on discovery sanctions are generally reviewed for abuse of discretion."[6] "We review a trial court's decision to admit evidence, including the testimony of a witness, for abuse of discretion."[7]

We review a decision to admit evidence under Alaska Evidence Rule 403 by "balanc[ing] the danger of unfair prejudice against the probative value of the evidence 'to determine whether the potential danger predominated so greatly as to leave us firmly convinced that admitting the challenged evidence amounted to a clear abuse of discretion under Evidence Rule 403.' "[8]

A court's "refusal to grant a new trial is reviewed under an abuse of discretion standard."[9]

When deciding questions of law, we "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[10] For mixed questions of law and fact, "we review factual questions under the clearly erroneous standard and legal

---

**6** *Christensen v. NCH Corp.*, 956 P.2d 468, 473 (Alaska 1998) (citing *Stone v. Int'l Marine Carriers, Inc.*, 918 P.2d 551, 554 (Alaska 1996); *In re Mendel*, 897 P.2d 68, 73 n.7 (Alaska 1995)).

**7** *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508 (Alaska 2015) (citing *Getchell v. Lodge*, 65 P.3d 50, 53, 58 (Alaska 2003)).

**8** *Jones v. Bowie Indus., Inc.*, 282 P.3d 316, 324 (Alaska 2012) (alteration in original) (quoting *Brandner v. Hudson*, 171 P.3d 83, 87 (Alaska 2007)).

**9** *Luther v. Lander*, 373 P.3d 495, 500 (Alaska 2016) (citing *Getchell*, 65 P.3d at 53).

**10** *Bd. of Trs., Anchorage Police & Fire Ret. Sys. v. Municipality of Anchorage*, 144 P.3d 439, 445 (Alaska 2006) (citing *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005)).

questions using our independent judgment."[11]  We will find clear error only "when we are left with a definite and firm conviction based on the entire record that a mistake has been made."[12]  We will find an abuse of discretion upon a showing that a decision was "arbitrary, capricious, manifestly unreasonable, or stemmed from improper motive."[13]

## IV.  DISCUSSION

### A.  The Superior Court's Failure To Give An Adverse Inference Instruction Was Not Plain Error.

Before trial it became clear that the parties would offer conflicting testimony on the size and weight of the can thrown at Lindbo.  Lindbo testified that he was hit with a heavy axle grease can; Lindley testified that he threw "an empty aerosol can."  The can was not preserved.

Lindbo moved before trial for an adverse inference jury instruction based on Colaska's failure to retain the can.[14]  Lindbo argued that the can's absence hindered

---

[11]     *Ben M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 204 P.3d 1013, 1018 (Alaska 2009) (citing *A.M. v. State*, 945 P.2d 296, 304 n.10 (Alaska 1997)); *see also Brown v. Knowles*, 307 P.3d 915, 923 (Alaska 2013) ("With regard to mixed questions of law and fact, we 'review[] the superior court's factual findings for clear error, and the legal issues de novo.' " (alteration in original) (quoting *Dashiell R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 222 P.3d 841, 849 (Alaska 2009))).

[12]     *Brown*, 307 P.3d at 923 (quoting *In re Protective Proceedings of W.A.*, 193 P.3d 743, 748 (Alaska 2008)).

[13]     *Tracy v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 279 P.3d 613, 616 (Alaska 2012) (citing *Ware v. Ware*, 161 P.3d 1188, 1192 (Alaska 2007)).

[14]     An adverse inference instruction allows the jury to infer from the spoliation of evidence that the evidence would have been unfavorable to the spoliator.  *See Todeschi v. Sumitomo Metal Mining Pogo, LLC*, 394 P.3d 562, 568, 574-75 (Alaska
(continued...)

his case because his testimony on its weight could not be corroborated. The superior court denied the motion without prejudice, advising Lindbo to renew his request at trial if the evidence presented warranted the instruction. Lindbo did not renew his request. Lindbo nonetheless appeals the superior court's failure to give an instruction.

Plain error review applies when a party failed to properly raise a jury instruction error at trial.[15] An objection is properly raised only if that party "provide[d] the superior court with an 'identifiable opportunity to rule' on the issue."[16] A pretrial motion for a non-specific, generalized jury instruction — denied without prejudice to a renewed request when jury instructions are being prepared — without a followup request for a specific instruction at the close of evidence does not provide an identifiable opportunity to rule.[17]

Lindbo's appeal falls squarely under this rule. The superior court denied his pretrial motion without prejudice, advising that he "is requesting a jury instruction

---

**14**     (...continued)

2017). We have not yet approved the use of such an instruction as a remedy for spoliation, nor have we announced the standard trial courts should use when deciding whether to give such an instruction. In *Todeschi* we declined to reach the issue because we concluded that any error was harmless. 394 P.3d at 577-78. For similar reasons here, we reserve decision on those issues.

**15**     *Reust v. Alaska Petroleum Contractors, Inc.*, 127 P.3d 807, 816 (Alaska 2005).

**16**     *Id.* (quoting *Manes v. Coats*, 941 P.2d 120, 125 n.4 (Alaska 1997)).

**17**     *See Jaso v. McCarthy*, 923 P.2d 795, 799-800 (Alaska 1996) ("The court told McCarthy's counsel that it would give an instruction if one was necessary and that it would consider arguments on the issue at a later point. McCarthy failed to re-visit the issue, as invited by the court, and did not object to the court's failure to give an instruction on the issue before the jury retired to consider the verdict. Therefore we review this issue only for plain error.").

and . . . may request a jury instruction during trial if the evidence actually presented warrants it." But Lindbo never took the court's suggestion by providing specific language for an instruction at trial. We therefore review his appeal for plain error.

Applying the plain error standard, there is no reversible error here. Plain error exists when "an obvious mistake has been made which creates a high likelihood that injustice has resulted."[18] This standard requires the error to be prejudicial; there must be a "reasonable probability that [the error] affected the outcome of the proceeding."[19]

Such a probability does not exist here. The jury verdict reflects that Lindley did not commit a battery, that Lindley's negligence caused Lindbo harm, that Lindbo had past economic loss (limited to wage loss) but no future economic loss,[20] and that Lindbo had past non-economic loss but no future non-economic loss. It is unclear which finding, if any, could have been changed by an adverse inference instruction. First, the battery finding turned on Lindley's intent.[21] Given that in Lindbo's closing argument he was able to attack Lindley's credibility by focusing on the can's weight, but that the jury still found no intent to make contact, adding an adverse inference instruction likely would

---

[18]     *Small v. Sayre*, 384 P.3d 785, 788 (Alaska 2016) (quoting *D.J. v. P.C.*, 36 P.3d 663, 668 (Alaska 2001)).

[19]     *See Adams v. State*, 261 P.3d 758, 773 (Alaska 2011).

[20]     Lindbo does not challenge the jury's failure to award past or future medical expenses. Although it is unclear whether Lindbo sought to collect this amount at trial, it appears from trial testimony that Colaska paid for Lindbo's emergency room visit.

[21]     *See Maddox v. Hardy*, 187 P.3d 486, 498 (Alaska 2008) ("Battery occurs when an actor intends to cause harmful or offensive contact with another and an offensive contact results.").

have made no difference.[22]  Second, Lindbo's economic loss was proven by Lindbo's medical records and work logs.  The can's weight could not have changed this finding.

The only finding that the can could possibly have changed was Lindbo's non-economic loss; a heavier can could have caused him greater pain and suffering.  But here too we are not persuaded that the failure to give an instruction created a "high likelihood that injustice has resulted."[23]  Lindbo was able to testify that he "feared for [his] life," that he required a pain injection at the emergency room, that the incident left him "in shock," that it caused "really bad leg pains and muscle spasms," that he was "in pain a lot and . . . didn't know what to do," and that he still suffered "weakness in [his] left leg" and a "slight limp."  The jury thus had ample testimony to make its non-economic loss award, but given (1) its failure to award any amount for past and future medical expenses, and (2) as discussed below, evidence of Lindbo's return to part-time work shortly after the incident, we are not convinced that adding an adverse inference instruction would have made any difference to the award's final amount.

**B.     The Superior Court Did Not Abuse Its Discretion By Permitting The Use Of Late-Disclosed Documents To Refresh A Witness's Recollection And By Later Admitting Those Records Into Evidence.**

On the second day of trial Colaska tried to admit 2 of 20 load sheets — which are filled out by K&K's drivers each work day and include when those drivers started and finished their work — showing that Lindbo returned to work shortly after being hit with the can.  Because the 20 load sheets were not previously disclosed during discovery, the superior court ruled they could be used only to refresh a witness's

---

[22]     *Cf. Todeschi v. Sumitomo Metal Mining Pogo, LLC*, 394 P.3d 562, 579 (Alaska 2017) (reasoning that failure to give adverse inference instruction was harmless in part because plaintiff's counsel was allowed to argue point in closing).

[23]     *See Small*, 384 P.3d at 788.

recollection.  Later that day K&K's owner, Daniel Karlson, testified that he believed Lindbo "did come back to work after th[e] incident . . . once or twice" as an extra driver but he could not remember the exact dates.  After Karlson refreshed his recollection by looking at the previously undisclosed load sheets, he testified that after the August 2012 incident he thought Lindbo came back to work on September 8 and October 6.

On the fourth day of trial Lindbo sought to admit only the 18 K&K load sheets showing when he worked prior to the incident; he did not want to admit the last two K&K load sheets showing that he worked after the incident.  The superior court ruled that if Lindbo sought to admit the 18 earlier load sheets, Colaska could admit the remaining two.  Lindbo chose to have all 20 of the load sheets admitted.

### 1. Permitting Karlson to refresh his recollection under Alaska Evidence Rule 612(a) did not contravene Alaska Civil Rule 37(c)(1).

Lindbo argues that allowing Karlson to refresh his recollection with previously undisclosed load sheets violated Alaska Civil Rule 37(c)(1).  Rule 37(c)(1) states:  "A party that without substantial justification fails to disclose information required . . . shall not, unless such failure is harmless, be permitted to use as evidence at trial" the undisclosed information.[24]  Lindbo contends Karlson did not use the documents to refresh his recollection, but he instead "read . . . them [into the record] verbatim."

We disagree with Lindbo's characterization.  Colaska did not "use [the load sheets] as evidence at trial";[25] Colaska instead used the load sheets to refresh Karlson's recollection.  Prior to refreshing his recollection Karlson had testified that Lindbo worked for him on two occasions after the incident.  We are therefore unconvinced that Karlson testified on this point from the load sheets instead of from his memory; any

---

[24]    Alaska R. Civ. P. 37(c)(1).

[25]    *See id.*

subsequent error arising from Karlson talking about the load sheets when he had them in front of him would be harmless because they later were moved into evidence.

Alaska Evidence Rule 612(a) states that "[a]ny writing or object may be used by a witness to refresh the memory of the witness while testifying."[26] We have held that:

> Under this rule, a document *need not be admissible* to be used to refresh a witness's memory. Instead, if the party using the document does not wish to admit it, Rule 612(a) simply allows any party seeking to impeach the witness whose memory is refreshed the right "to inspect the writing . . . , to cross-examine the witness thereon, and to introduce those portions which relate to the testimony of the witness." By expressly granting the right to immediate inspection, *the rule implicitly recognizes the absence of a pretrial duty of disclosure*.[27]

Furthermore, because Evidence Rule 612(a) allows *any* writing to be used for refreshing recollection,[28] we reject Lindbo's argument that refreshing a witness's recollection by using a previously undisclosed document violates Civil Rule 37(c)(1).[29] The superior court did not err or abuse its discretion by allowing Karlson to use previously undisclosed load sheets to refresh his recollection.

---

[26] Alaska R. Evid. 612(a).

[27] *Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1253 (Alaska 2007) (alteration in original) (emphasis added) (footnotes omitted) (first citing Alaska R. Evid. cmt. 612(a); then quoting Alaska R. Evid. 612(a)).

[28] *See also* Alaska R. Evid. cmt. 612(a) (explaining Rule 612(a) "rejects limitations on the kinds of writings or objects" permissible for use and noting "anything can be used to refresh the memory of a witness").

[29] *See Denison*, 167 P.3d at 1253 (holding that parties objecting to use of object to refresh recollection may inspect object but have "no right of earlier disclosure").

### 2. Any error in admitting the late-disclosed documents was harmless.

Lindbo argues that he should have been permitted to enter only the load sheets demonstrating his preinjury work history because Rule 37(c)(1) forbade the late-disclosing party from admitting the other two load sheets into evidence. He contends the admission of the last two load sheets was prejudicial and that he was afforded no time to rebut the new evidence. We conclude that any possible error from admitting the post-injury load sheets was harmless.

Lindbo's primary argument on appeal is that although discovery sanction issues are usually reviewed for abuse of discretion, Rule 37(c)(1) "mandates" a sanction, leaving the court "no discretion" in its application. But under Rule 37(c)(1) exclusion is just the express immediate sanction;[30] the Rule should not be read as completely removing the superior court's discretion over evidentiary matters.[31] Here, the superior court *did* exclude the two load sheets when Colaska sought to admit them initially. Lindbo then sought to admit only the preinjury load sheets that helped him present his case, which the superior court correctly noted "would have created the impression that K&K's complete records for Mr. Lindbo's work . . . were being admitted" and "the absence of any records after the date of his injury [could wrongly] evidence . . . that Mr. Lindbo did not work for Mr. Karlson because he was too injured to do so, which would be entirely inconsistent with the records . . . at issue." We agree with the superior court that Lindbo's desired sanction would have misrepresented the evidence, and we do

---

[30]    *See* Alaska R. Civ. P. 37(c)(1) (providing that the violating party "shall not . . . be permitted to use [the information] as evidence at trial" and that the court may impose other sanctions "[i]n addition to *this sanction*" (emphasis added)).

[31]    *See id.* (providing court may impose other sanctions "[i]n addition to *or in lieu of* this sanction").

not read Rule 37 to require the jury to receive a false impression of the evidence as the sanction for a discovery violation.

Lindbo also argues that the admission of the two load sheets was prejudicial because he had "no opportunity to counter it." We agree with Lindbo that being forced to choose between letting all of the load sheets in or excluding all of them put him in a difficult position. But Lindbo has the burden of showing prejudicial error, and we are not convinced that the superior court's actions had any impact on the verdict.[32] Thus, even if we were to go so far as to find an abuse of discretion, any error was harmless.

First, admitting the last two load sheets — indicating that Lindbo worked on September 8 and October 6 — was not prejudicial because other evidence already demonstrated that Lindbo was physically able to, and in fact did, work following the injury. Karlson testified that Lindbo worked for him "a couple of times" after the incident, observing that Lindbo appeared "fine" with no noticeable limping or pain. Colaska's asphalt plant manager, John Logsdon, also testified that he recalled Lindbo hauling loads at the plant after the incident, saw Lindbo discussing the injury with others, and expressly told Lindbo to "get back in your truck and just don't talk to these guys." Logsdon definitively placed that day as the "sixth of October." Lindbo himself also implied in his complaint that he went back to work, alleging an exchange he had with Logsdon after the incident and how Colaska did not call Lindbo back to work *after* that post-incident exchange.

Second, Lindbo was not prejudiced by the timing of the newly discovered evidence. Contrary to his claim that he was "unable to take any action to investigate if the [last two load sheets] were accurate or obtain evidence to rebut the new evidence,"

---

[32]     *See Myers v. Robertson*, 891 P.2d 199, 208 (Alaska 1995) (citing *Loof v. Sanders*, 686 P.2d 1205, 1209 (Alaska 1984)).

Lindbo *did* refute the accuracy of the load sheets through testimony. When asked specifically about the October 6 sheet, Lindbo testified that although his name appeared in his handwriting, he had left many otherwise blank load sheets filled out with his name in his truck at the plant, implying that someone else may have filled it out. And Lindbo did not ask for a continuance "request[ing] additional time to obtain and present other evidence related to his whereabouts on September 8 . . . and October 6, 2012." Lindbo never suggested any alternative sanction that could have punished Colaska without causing him unfair surprise, which he was surely entitled to do as the victim of a discovery violation. Lindbo's failure to take any action in the superior court to ameliorate the surprise, except to insist that he was entitled to present a distorted view of the evidence, cautions us against now finding prejudice on this record.

We therefore hold that error, if any, in how the superior court sanctioned Colaska or dealt with the admission of the load sheets, was harmless.

### C. Lindbo's Arguments About His Drug Use, Child Support Payments, And Prior Injuries Are Meritless Or Abandoned.

#### 1. The superior court did not abuse its discretion by denying Lindbo's motion to exclude all evidence of drug use, and any objection to improper use of that evidence is unpreserved.

Lindbo argues that Colaska improperly relied on evidence of his prior prescription drug use during trial. Citing Alaska Evidence Rule 404(a) he contends that the evidence presented impermissibly tainted his character.[33]

Lindbo first raised this issue in a pretrial motion in limine. The superior court denied Lindbo's motion in part, stating that "at this point . . . the evidence is clearly probative with respect to" both his "ongoing pain complaints" and credibility. But the

---

[33]    *See* Alaska R. Evid. 404(a) ("Evidence of a person's character or a trait of character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion . . . .").

court also ruled that Colaska would "not be permitted to argue that the jury may consider the evidence for a non-relevant purpose," and suggested that the court would "provide a limiting instruction to the jury" at Lindbo's request.

Lindbo raised this issue again as an objection prior to opening arguments, requesting a limiting jury instruction that the superior court agreed to give. Lindbo agreed to the language the superior court drafted with one exception: he requested that the word "alleged" be added before "drug usage," which the court included.[34] Lindbo

---

[34] The superior court's limiting instruction stated:

You are about to hear the attorney's opening statements. Opening statements are an opportunity for an attorney to tell the jury what he or she anticipates the evidence admitted at trial will be. As I have previously advised you, nothing the attorneys say is evidence and nothing that they refer to in their opening statement is in evidence. It remains to be seen what evidence will be admitted during the trial.

I anticipate that one or both of the defense attorneys will make an opening statement and that, during the opening statement or statements, there will be references made to alleged drug usage by Mr. Lindbo. There are four things that you must understand about such references. First, what is said is not evidence. Second, if such evidence is admitted during the trial it could be considered by you only for the limited purpose of evaluating Mr. Lindbo's injury claims. Third, you could not consider such evidence for any other purpose whatsoever unless subsequently otherwise instructed by the court. Fourth, if such evidence is admitted during the trial you should give it the weight that you believe it deserves for the limited purpose for which you may consider it.

did not object at any other point during the trial about this issue, including when the court gave its final jury instruction on his alleged drug usage.[35]

We construe Lindbo's appeal as challenging any evidence of his drug use, which was undoubtedly preserved for appeal.[36] To the extent Lindbo is now arguing that specific uses at trial violated the superior court's pretrial order, his objections are unpreserved.[37] So construed, the superior court did not abuse its discretion by denying Lindbo's motion in limine.[38] The Rules of Evidence do not completely forbid the jury from hearing evidence that may create an impermissible character inference.[39] Instead,

---

[35] The superior court's limiting jury instruction given at the trial's conclusion stated:

> There are references in the record to alleged drug usage by Mr. Lindbo. There are three things that you must understand about such references. First, the evidence was admitted during the trial only for the limited purpose of evaluating Mr. Lindbo's injury claims. Second, you shall not consider such evidence for any other purpose whatsoever. Third, you should give this evidence the weight, if any, that you believe it deserves for the limited purpose for which you may consider it.

[36] *See Landers v. Municipality of Anchorage*, 915 P.2d 614, 617 (Alaska 1996) (holding that party has no duty to continue objecting during trial to challenge initial denial of motion in limine on appeal).

[37] *See Conley v. Alaska Commc'ns Sys. Holdings, Inc.*, 323 P.3d 1131, 1139 (Alaska 2014) (holding that moving to exclude evidence in limine only preserves right to challenge motion's denial on appeal; party must object at trial to preserve challenges to how evidence is used).

[38] *See id.* at 1136 n.9 (holding that denial of a motion in limine seeking exclusion of evidence is reviewed for an abuse of discretion).

[39] *See id.* at 1136.

the superior court must weigh the undue prejudice of the character inference against any probative value the evidence has for a permissible purpose under Rule 403.[40]  We will not reverse a superior court's balancing under this test unless convinced the "potential danger predominated so greatly" as to constitute a clear abuse of discretion.[41]

We have addressed this issue in the context of drug use and personal injury before; in *Liimatta v. Vest* we held that a trial court abused its discretion by excluding evidence of the plaintiff's drug use.[42]  In that case the plaintiff sought in a motion in limine to exclude her history of drug abuse problems.[43]  The court excluded any evidence of preaccident drug use, reasoning that it was unduly prejudicial.[44]  We reversed, reasoning that preaccident drug-seeking behavior was highly relevant to damages, credibility, and causation, and that excluding evidence bearing on the crux of the case was an abuse of discretion.[45]

Here Lindbo's history of drug-seeking behavior also was relevant to damages, credibility, and causation.  Especially at the pretrial stage, the superior court reasonably contemplated that such evidence could show Lindbo's pain and medical expenses were incurred because of drug-seeking behavior, and were not caused by

---

[40]     *Id.*

[41]     *Jones v. Bowie Indus., Inc.*, 282 P.3d 316, 324 (Alaska 2012) (quoting *Brandner v. Hudson*, 171 P.3d 83, 87 (Alaska 2007)).

[42]     45 P.3d 310, 315 (Alaska 2002).

[43]     *Id.* at 313.

[44]     *Id.*

[45]     *Id.* at 313-15.

Lindley.  The evidence thus "[bore] on the crux of the case"[46] and was "highly relevant to the central issues."[47]  Under these circumstances, even given the inherent danger that evidence of drug use always presents, the superior court did not abuse its discretion by denying Lindbo's motion in limine.

Lindbo counters that we should rely on *Jones v. Bowie Industries, Inc.*[48] to find an abuse of discretion.  He argues that his case is "even stronger" than Jones's because Lindbo's drug history is more remote in time than was Jones's.  But *Jones* is inapposite; the issue in that case was not the length of time between the drug use and the injury but the defendant's failure to use the evidence for a permissible purpose.[49]  Here, in contrast, the superior court did not admit the evidence for an improper purpose, rather it properly weighed the danger of the character inference against the probative value of the evidence's legitimate purpose.  The superior court did not err in weighing the evidence in this way and it did not abuse its discretion by concluding that the probative value of the evidence outweighed the danger of unfair prejudice.

Accordingly, we hold that the superior court did not abuse its discretion by denying Lindbo's motion in limine.

### 2. Lindbo abandoned his arguments regarding evidence of prior injuries and failure to pay child support.

Lindbo contends that the superior court "allowed [Colaska] to discuss numerous injuries unrelated to his back in order to show that Lindbo had a history of

---

**46** *See id.* at 315 (quoting *CNA Ins. Co. v. Scheffey*, 828 S.W.2d 785, 790 (Tex. App. 1992)).

**47** *See id.*

**48** *See* 282 P.3d 316, 328-31 (Alaska 2012).

**49** *See id.* at 330-31.

exaggerating his injuries." He asserts that presenting evidence showing a history of exaggerating injuries is impermissible because it suggests that Lindbo "acted in conformity therewith" for the injury in question.[50] Lindbo also argues that "references to not paying child support and not working" during Colaska's trial presentation violated Alaska Evidence Rule 404(a).

But Lindbo points to no specific examples of testimony or evidence for either issue demonstrating his contentions. Nor does he cite helpful authorities establishing a connection between the presented evidence and his contention that there was an inappropriate admission of character evidence. Because Lindbo has devoted only cursory statements to these arguments in his brief, we conclude that the issues are both abandoned.[51]

**D.    The Superior Court Did Not Abuse Its Discretion By Allowing The Introduction Of A Prior Attempted Vehicle Theft Conviction As A Crime Involving Dishonesty For Impeachment Purposes.**

Lindbo pled guilty in July 2010 to attempted first degree vehicle theft; he was convicted of a class A misdemeanor.[52] This conviction was admitted at trial for impeachment purposes as a crime involving dishonesty. Lindbo argues that this admission was improper because the crime of attempted vehicle theft is a "less serious

---

[50]    *See* Alaska R. Evid. 404(a).

[51]    *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal."); *see Sykes v. Melba Creek Mining, Inc.*, 952 P.2d 1164, 1171 (Alaska 1998) ("[C]onclusory briefing of [a] point would warrant a finding of abandonment.").

[52]    AS 11.31.100(d)(5) (characterizing attempted class C felony as class A misdemeanor); *see also* AS 11.46.360(a) (outlining crime of vehicle theft).

offense," that it is "more akin to joyriding," that it "does not necessarily involve dishonesty," and that the conviction was more prejudicial than probative.

Alaska Evidence Rule 609 states that "[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is only admissible if the crime involved dishonesty or [a] false statement."[53] "Evidence . . . under this rule is inadmissible if a period of more than five years has elapsed since the date of the conviction."[54] "[A] witness may be impeached by evidence of a prior conviction" after the court "weigh[s] its probative value against its prejudicial effect."[55]

Lindbo first contends that evidence of his conviction was improperly admitted under Rule 609 because vehicle theft is not a crime involving dishonesty. Lindbo argues that because he did not have the intent to permanently deprive he could not have committed a crime involving dishonesty.

We disagree with Lindbo's characterization of his prior conviction. We have previously concluded that an intent to deprive is not a mandatory component for admitting an impeachable offense under Rule 609.[56] In *City of Fairbanks v. Johnson* we determined that crimes of dishonesty do not "require[] an intent to permanently deprive" to be admissible under Rule 609.[57] We held that the offense of concealment of merchandise was a crime involving dishonesty because it "involves some element of deceit, untruthfulness[,] or falsification bearing on the accused's propensity to testify

---

[53]   Alaska R. Evid. 609(a).

[54]   Alaska R. Evid. 609(b).

[55]   Alaska R. Evid. 609(c).

[56]   *City of Fairbanks v. Johnson*, 723 P.2d 79, 82 (Alaska 1986).

[57]   *Id.* ("We have not held that *only* an offense which requires an intent to permanently deprive is admissible for impeachment purposes." (emphasis in original)).

truthfully."[58]  This case is similar to *Johnson*.  Whether Lindbo had the intent to *permanently* deprive the rightful owner of the vehicle is irrelevant.

Lindbo next argues that vehicle theft is not a crime of dishonesty because "a person can be guilty of vehicle theft even if the person honestly, but unreasonably, believes he has a right to drive the vehicle."  In other words, Lindbo argues that vehicle theft is not automatically a crime of dishonesty because there is no unreasonable mistake of fact defense for the honest offender.  Lindbo may be correct on this point; the Commentary to the Alaska Rules of Evidence notes that "modern theft statutes may encompass criminal conduct that does not fall within [Federal Rule of Evidence 609(a)(2)]" and that courts may have to parse whether the particular crime "involved the deceit envisioned by the rule."[59]  But we do not have to decide here whether vehicle theft is necessarily a crime of dishonesty, nor whether such parsing is appropriate, because Lindbo was convicted of attempted vehicle theft.  An attempt conviction requires specific "intent to commit a crime";[60] Lindbo therefore must have intended to drive the car

---

[58]      *See id.* (citing J. MOORE, FEDERAL PRACTICE, RULE PAMPHLET PART 2, R. 609 at 196 (1986)) ("[T]o be guilty of the crime of concealment of merchandise the defendant must have intentionally hidden merchandise.  The intentional hiding of merchandise from a merchant involves dishonesty and deceit.  It therefore may be seen as probative of a person's truthful character.").

[59]      Alaska R. Evid. cmt. 609(a) (quoting *United States v. Papia*, 560 F.2d 827, 847 (7th Cir. 1977)).

[60]      *See* AS 11.31.100(a) ("A person is guilty of an attempt to commit a crime if, with intent to commit a crime, the person engages in conduct which constitutes a substantial step toward the commission of that crime."); *see also Sergie v. State*, 105 P.3d 1150, 1153-55 (Alaska App. 2005) (explaining that mental state attendant circumstance of "reckless disregard to the victim's consent" applied to attempted sexual assault charge).

without believing he had any right or reasonable ground to do so. Lindbo could not have intended to act mistakenly.

Lindbo also suggests that because his conviction for attempted vehicle theft was 4 years and 11 months prior to trial, the conviction was too remote in time to be used for impeachment. But Rule 609(b) allows for convictions involving dishonesty to be used for impeachment purposes unless "*more* than five years [has] elapsed" since the conviction date.[61] Because the trial occurred less than five years after Lindbo's conviction and the superior court properly weighed the probative and prejudicial value of admitting the evidence for impeachment purposes,[62] we conclude that it was not an abuse of discretion to admit the attempted vehicle theft conviction to impeach Lindbo's credibility.

### E. The Superior Court Did Not Err By Failing to Correct Improper "Vouching" During Closing Arguments Because The Statements Were Permissible.

Lindbo contends that during closing arguments Colaska's counsel improperly alluded to a witness's reason for not testifying at trial. Colaska's counsel implied that one of Lindbo's witnesses, Dr. John Ballard, did not testify at trial "because

---

[61]    Alaska R. Evid. 609(b) (emphasis added).

[62]    The superior court gave three reasons why the probative value outweighed the prejudicial effects: (1) "the offense is a mid-range criminal offense"; (2) "the conviction has significant probative value"; and (3) "the court can provide an appropriate limiting instruction." The superior court did not clearly abuse its discretion in making this determination. *See Johnson*, 723 P.2d at 85 ("[I]t is manifest that the draftsmen intended that the trial [court] be given a very substantial discretion in 'balancing' probative value on the one hand and 'unfair prejudice' on the other, and that [it] should not be reversed simply because an appellate court believes that it would have decided the matter otherwise." (first alteration in original) (quoting *United States v. Long*, 574 F.2d 761, 767 (3d Cir. 1978))).

he didn't have good things to say." Lindbo argues that this constitutes improper "vouching."

We conclude that the superior court did not err because Colaska's counsel's statements were not improper vouching. Although counsel may not personally vouch for the credibility of a witness,[63] an attorney may suggest that a jury consider the absence of certain evidence.[64] Alaska Civil Pattern Jury Instruction 2.23 states the following:

> The evidence should be evaluated not only by its own intrinsic weight but also according to the evidence which is in the power of one party to produce and of the other party to contradict. *If weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory evidence was within the power of one party to produce, the evidence offered should be viewed with caution.*[65]

An alternative instruction permits jurors to "consider whether witnesses with more knowledge than those called to testify by a party were available to that party and yet were not called. If so, this might suggest a weakness in that party's case."[66]

When Colaska's counsel started discussing Dr. Ballard during closing argument, Lindbo's counsel objected.[67] The superior court agreed that Colaska's counsel could not "personally vouch for witnesses," and Colaska's counsel proceeded with closing argument. Colaska's counsel then made the following statement:

---

[63]    *See* Alaska R. Prof. Conduct 3.4(e).

[64]    *See* Alaska Civ. Pattern Jury Instruction 2.23 (rev. 1999).

[65]    *Id.* (emphasis added).

[66]    *Id.*

[67]    Colaska's counsel was interrupted by an objection from Lindbo's attorney after saying "[i]f Dr. Ballard was really such a great witness and he's really going to say anything positive . . . ."

[I]f Dr. Ballard was going to say positive things, why wasn't he presented to you? Why wasn't he called on the phone? Dr. [Andrew] Pankow was called on the phone. Why wasn't he presented by video? I'll tell you it's because he didn't have good things to say. That's why we got a[n] expert report in there and nothing else.

Lindbo's counsel did not renew his objection.

Colaska's counsel did not "state a personal opinion as to . . . the *credibility* of a witness."[68] Colaska's counsel instead "suggest[ed] a weakness" in Lindbo's case for not calling Dr. Ballard to testify.[69] Because Colaska's counsel's statements were not improper vouching, we conclude that the superior court did not err by failing to correct the statements.[70]

### F.    It Was Not An Abuse Of Discretion To Deny Lindbo's Motion For A New Trial Based On Alleged Discovery Violations.

Following the verdict Lindbo moved for a new trial.[71] The sole basis for his motion was the superior court's treatment of the previously undisclosed load sheets; Lindbo argued they "gravely prejudiced [his] ability to present his case."[72]

---

[68]    Alaska R. Prof. Conduct 3.4(e) (emphasis added).

[69]    Alaska Civ. Pattern Jury Instruction 2.23.

[70]    Lindbo also vaguely asserts that the Dr. Ballard comments were "not the only example of . . . Colaska referring to information not presented to the jury." His contention is not clear and therefore will not be considered on appeal. *See Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991).

[71]    *See* Alaska R. Civ. P. 59(a) ("A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury or in an action tried without a jury, if required in the interest of justice.").

[72]    In his motion for a new trial Lindbo elaborated on his position that the superior court's decisions violated Civil Rules 26(a) and 37(c)(1).

We recognize that with his motion Lindbo attached an affidavit from his fiancée — produced 12 days after closing arguments — attesting that Lindbo did not work on September 8. According to his fiancée, Lindbo was with her first at the Ketchikan hospital and then on a medivac flight to Anchorage, where she gave birth to their twins. The motion included Lindbo's telephone records demonstrating 911 calls placed at 4:29 a.m. and 4:35 a.m. that morning, suggesting the calls were placed due to the medical situation. An attached transport data form also showed that Lindbo was at least a "potential rider" on a medivac flight departing Ketchikan at approximately 10:00 a.m.

But the superior court observed that Lindbo had received a call from Karlson at 4:32 a.m., and that the September 8 load sheet showed Lindbo picked up and dropped off his material loads from 5:45 a.m. to 7:41 a.m. The court reasonably surmised — absent any other explanation from Lindbo — that Karlson had called Lindbo to work that morning. The court also expressed that based on evidence Lindbo used to support his motion, he could have "been at work and later at the hospital that morning." Because the superior court's explanation of events is not unreasonable, we conclude that the superior court did not abuse its discretion in denying Lindbo's motion for a new trial.

## V. CONCLUSION

We AFFIRM the superior court on all issues.