NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KEITH J. MAURER, | ) | |
| | ) | Supreme Court No. S-17727 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-17-01486 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| ALASKA AIRLINES, INC., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1840 – July 28, 2021 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Jeffrey J. Barber, Barber & Associates, LLC, Anchorage, and Richard Harren, Law Offices of Richard L. Harren, P.C., Wasilla, for Appellant. John Fetters, Caryn Geraghty Jorgensen, and Rachael R. Wallace, Stokes Lawrence, P.S., Seattle, Washington, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

## I.    INTRODUCTION

An airline passenger reported that his elbow had been struck by a service cart pushed by an airline employee. Unable to return to work due to nerve pain in his elbow, he brought a personal injury suit against the airline claiming that its negligence had caused him physical injury and loss of income.

---

\*    Entered under Alaska Appellate Rule 214.

Before and during the trial, the passenger unsuccessfully objected to several evidentiary rulings by the trial court. After the jury found the airline had not been negligent, the passenger unsuccessfully moved for a new trial based primarily on perceived judicial bias. He now appeals, alleging judicial error on multiple evidentiary and procedural rulings as well as the trial court's refusal to grant a new trial. But the passenger fails to show that the court abused its discretion or committed reversible error. We therefore affirm the trial court's decisions.

## II.    FACTS AND PROCEDURAL HISTORY

### A.    Facts

In May 2015 Keith Maurer, an experienced heavy-equipment mechanic, left work on the North Slope for three weeks of scheduled time off, taking an Alaska Airlines flight his employer had booked for him. Maurer was seated by the aisle in an exit row. He used a seatbelt extender and fell asleep shortly after takeoff.

Maurer awoke when something struck his elbow. He testified that he "flew forward from the impact and the traumatic pain to [his] elbow" and turned to see a service cart being pushed by a flight attendant, who apologized immediately. The flight attendant did not return to check on Maurer and could not later recall the incident. Although Maurer experienced pain and "massive swelling[,] . . . numbness and tingling" in his hand and arm, he did not request medical attention during the flight.

After landing in Anchorage Maurer reported the incident to a second flight attendant and an Alaska Airlines agent at the terminal. The agent took Maurer's statement and a picture of his arm, which she emailed to her supervisor. Maurer declined her offer of medical attention or an ambulance, stating that he would go to the doctor the next day if the pain persisted. Both Maurer's wife and his airport shuttle driver observed that he was in pain and experiencing limited mobility; when Maurer's arm had not improved by the next morning, he went to the hospital.

The examining doctor concluded that Maurer had "likely contused his ulnar nerve" and sent him home with prescriptions for oral pain killers and his arm in a sling. Although Maurer soon regained full mobility, his arm remained tender. He began to visit Dr. Bobby Lucas to treat his elbow pain, as well as lower back problems that Maurer attributed to the elbow injury's impact on his mobility.

Maurer returned to the North Slope as scheduled, but the work aggravated his injury and caused his arm to swell; after one week he was sent home for further medical care. On his return to Anchorage Maurer was seen by Dr. Lucas as well as orthopedic surgeon Dr. Michael McNamara, who diagnosed Maurer with moderate cubital tunnel syndrome[1] resulting from "a significant strike from a steel or metal beverage cart."

After speaking with an Alaska Airlines insurance representative Maurer filed a workers' compensation claim for his injury and medical treatment. He underwent an employer's independent medical examination by Dr. Charles Craven, who diagnosed "ulnar nerve neuritis[2] and cubital tunnel syndrome." Dr. Craven concluded that the incident Maurer described was "the substantial cause" of the injury and subsequent need for medical treatment, and that surgery was reasonable and medically necessary.

Dr. McNamara performed "right ulnar nerve decompression" surgery on Maurer's elbow in December 2015, but a medical examination later determined that Maurer could no longer work as a mechanic. Maurer settled his workers' compensation

---

[1]    "Cubital tunnel syndrome" is a group of symptoms, which may include a prickling sensation, numbness, or muscle weakness in the hand, resulting from nerve compression at the elbow. *Cubital tunnel syndrome*, STEDMANS MEDICAL DICTIONARY, Westlaw (database updated Nov. 2014).

[2]    Inflamation of the ulnar nerve, which runs the full length of the arm. *Neuritis*; *ulnar nerve*, STEDMANS MEDICAL DICTIONARY, Westlaw (database updated Nov. 2014).

claim for a lump-sum payment. His employer's insurance carrier retained a statutory lien on any further recovery he might obtain.[3] Maurer filed suit against Alaska Airlines in 2018, seeking compensatory damages for injuries resulting from its employee's allegedly negligent handling of the service cart.

## B.   Discovery And Pretrial Motions

Early in the extensive motions practice that followed, the parties agreed to exclude any evidence of Alaska Airlines' insurance, and the court ordered that no "evidence referring directly or indirectly to insurance" could be introduced at trial. Alaska Airlines did not produce the photo of Maurer's arm taken by its agent shortly after the incident, but it did provide the agent's accident report and an email from the flight attendant to whom Maurer had reported the incident. Maurer also listed his wife and his airport shuttle driver as witnesses who could testify regarding his condition shortly after the accident.

Alaska Airlines' final witness list included Dr. Craven, by deposition, and its retained medical expert Dr. Charles Brooks. Maurer's list included Dr. Lucas, Dr. Olson, and "[a]ny appropriate rebuttal witnesses." He also designated Dr. McNamara's deposition testimony and counter-designated testimony from Dr. Craven's deposition.

Dr. Brooks submitted an expert report concluding, based on his review of Maurer's medical records, that the accident "almost certainly" had not caused "injury of sufficient severity to require treatment" and that Maurer's symptoms were the result of "preexisting, ongoing, and unrelated conditions."

---

[3]     *See* AS 23.30.015(g) ("If the employee . . . recovers damages from the third person, the employee . . . shall promptly pay to the employer the total amounts paid by the employer.").

Maurer deposed his orthopedic surgeon Dr. McNamara shortly after Dr. Brooks's report was submitted. Dr. McNamara stated that "the injury is probably what led to" the symptoms for which he had operated. He believed, "to a reasonable degree of medical certainty," that the injury had been caused by the cart strike, but could not say with "absolute certainty" whether it had caused Maurer's symptoms. The court excluded Dr. McNamara's statements that he himself had been struck with an airplane cart on the day prior to his deposition and envisioned how that might lead to a serious injury on the ground that these statements were irrelevant and non-responsive.

After an evidentiary hearing on Dr. Lucas's credentials and experience treating Maurer, the court stated that "as [Maurer]'s chiropractor, [Dr. Lucas] never diagnosed [him] with cubital tunnel syndrome. Thus, Dr. Lucas cannot testify as to [Maurer]'s cubital tunnel syndrome," whether "as an expert" or "as [his] treating physician." It barred Dr. Lucas from discussing "the possible causes or prognosis of [Maurer]'s cubital tunnel syndrome," although he would be able to testify regarding Maurer's symptoms.

Maurer initially sought to examine the actual aircraft on which he had been injured in Alaska. Alaska Airlines instead counter-proposed arranging "an inspection of a 'look-alike' aircraft in Seattle at a time when the aircraft is already out of commercial service" or "providing . . . the dimensions of the seats, aisleways and beverage cart." It estimated that bringing the aircraft to Anchorage would cost $126,000. Maurer next asked to access a similar airplane "and an exemplar cart" in Anchorage to "conduct [an] inspection and [take] any photos while the plane is being prepped between landing and takeoff." Alaska Airlines refused, citing financial and safety concerns.

Maurer then filed a motion to compel Alaska Airlines to provide an airplane for inspection, asking to board a flight early in Anchorage "to have some brief use of the cart with . . . Maurer in the same seat" as the day of the injury or, alternatively, to have

a similar aircraft made available for inspection on the ground in Anchorage. He explained that doing so in Seattle would be "unfairly expensive" and "too time consuming." Alaska Airlines objected that removing the aircraft from service would be expensive and "implicate[] serious security issues." Citing Alaska Civil Rule 26(b)(2)(A), the court explained that Maurer had "been given ample opportunity to discover the information he seeks through less burdensome and expensive ways" and had "not provided a reason for why he believes that the alternatives" suggested by Alaska Airlines "are inadequate." The court therefore denied the motion.

## C.    The Trial

During trial Maurer repeatedly sought to introduce a cart he had independently obtained as a demonstrative exhibit. The court barred its introduction on the grounds that Maurer could not establish the degree of similarity between his cart and the service cart involved in the accident. The jury was never shown a tangible cart, but diagrams and photographs of Alaska Airlines' service carts were introduced.

Although Alaska Airlines failed to produce the photograph of Maurer's arm taken on the day of the injury, Maurer introduced the initial accident report and an email from the flight attendant to whom he had first reported the incident. The attendant wrote that Maurer had described the incident and "ask[ed] about compensation . . . . I could just tell he was searing [sic] for an 'in[,]' a way to get some money." Maurer then sought to describe his safety training on the North Slope, which he argued would show he was following his standard accident-reporting procedures rather than seeking "a way to get some money." The court sustained Alaska Airlines' objection to this testimony as irrelevant.

Maurer attempted to testify that he had filed a workers' compensation claim on the advice of Alaska Airlines' insurance representative; the airline objected. The court noted its previous order excluding all evidence relating to liability insurance.

When asked to explain the issue's relevance Maurer agreed to simply move on, and the court excluded the testimony.

Maurer presented testimony from Drs. Olson, Lucas, and McNamara. During Dr. Lucas's testimony Maurer asked, "based on [Dr. Lucas's] understanding of [Maurer's] symptoms," which of them could be traced back to the incident with the cart. The court barred this line of questioning as contrary to its order that Dr. Lucas not testify regarding causation; when Maurer protested that the order did not prevent Dr. Lucas from discussing his opinions as a treating physician, the court explained that as a chiropractor Dr. Lucas lacked the requisite medical expertise to provide this testimony. Maurer did present testimony on injury causation from Drs. Olson and McNamara.

During the testimony of Alaska Airlines' retained expert, Dr. Brooks, Alaska Airlines asked him several questions about Dr. McNamara's deposition. Maurer objected repeatedly to this line of questioning as beyond the scope of Dr. Brooks's expert report, which had been filed before the deposition took place. Alaska Airlines responded that Dr. Brooks had not changed his views since filing his report, and the court allowed the testimony to proceed. Dr. Brooks testified that Maurer's symptoms had not been caused by the service cart and that he agreed with passages of Dr. McNamara's deposition expressing doubt regarding injury causation. On cross-examination Maurer brought up Dr. McNamara's stated belief that the cart collision had caused Maurer's symptoms, but Dr. Brooks indicated that this had not changed his view of the issue.

Alaska Airlines had included Dr. Craven in its final witness list but did not present his testimony. Maurer asked to play Dr. Craven's deposition to the jury, explaining that he had anticipated Alaska Airlines doing so, but the court denied this request.

On the final day of trial Maurer asked to present rebuttal evidence. He first asked to testify that he had been provided a seatbelt extender by Alaska Airlines — in

violation of safety rules prohibiting extenders in exit rows — and had not, as had been briefly suggested at trial, brought his own. Maurer also asked to read portions of Dr. Craven's deposition, arguing that he could not have anticipated Alaska Airlines' decision not to present it at trial and that it was necessary to rebut Dr. Brooks's testimony about causation. The court decided that the seatbelt extender was a collateral issue, that the deposition would essentially just restate earlier testimony, and that both pieces of evidence could have been presented during Maurer's case-in-chief. No rebuttal was allowed.

Maurer requested jury instructions on spoliation and corporate knowledge, arguing that Alaska Airlines had been negligent in failing to preserve or produce the photograph of his arm taken by its agent and that knowledge of the photograph's existence should be attributed to the entire company. And he asked for a jury instruction on workers' compensation explaining that a damages award would not result in a double recovery. The court rejected these proposed instructions.

Maurer finally suggested that giving the case to the jury on the afternoon before a three-day weekend would create "a lot of undue pressure on the jurors" to end deliberations quickly. The court disagreed and gave the case to the jury. The jury deliberated for under two hours, announcing at 4:35 p.m. its finding that Alaska Airlines had not behaved negligently. The jury therefore did not reach issues of causation, injury, or damages. Maurer moved for a new trial based primarily on alleged judicial bias; the court denied his motion.

Maurer now appeals to us, raising numerous procedural issues. He argues that the trial court erred by (1) refusing to compel access to the airplane or cart before trial; (2) excluding evidence at trial; (3) allowing Dr. Brooks to testify beyond the scope of his expert report; (4) denying rebuttal testimony; (5) rejecting Maurer's proposed jury

instructions; (6) not postponing jury deliberations; and (7) denying Maurer's motion for a new trial.

## III. DISCUSSION

### A. The Court Did Not Err By Refusing To Compel Inspection Of The Airplane And Service Cart.

Maurer first argues that the trial court abused its discretion by refusing to compel access to an aircraft, and that it failed to properly consider the importance of access to the airplane and the relative burden, inconvenience, and expense the airline's alternatives would have caused him as a private plaintiff. Alaska Airlines stresses the logistical impediments to allowing Maurer to board a flight early or interfere with the flight attendants' duties. It also points to its proposed alternatives: Maurer could have traveled to Seattle to inspect an out-of-service aircraft or paid to transport one to Anchorage; either option, Alaska Airlines asserts, would have been less burdensome than Maurer's requested discovery orders, particularly as Maurer's attorneys made trips to Seattle, San Diego, and Dallas during the course of the litigation.

We review a trial court's discovery orders for abuse of discretion, although whether the court considered the appropriate factors when issuing or denying a discovery order is a question of law we review de novo.[4] Parties may generally obtain discovery of any relevant, non-privileged evidence,[5] subject to the court's reasonable limitations.[6] A trial court should limit discovery if the evidence sought is obtainable from a less burdensome source, if "the party seeking discovery has had ample opportunity . . . to obtain the information" elsewhere, or if the proposed discovery's burden outweighs its

---

[4]   *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 594 (Alaska 2007).

[5]   *Noffke v. Perez*, 178 P.3d 1141, 1150 (Alaska 2008).

[6]   Alaska R. Civ. P. 26(b)-(c).

likely benefit.[7]  In making this decision the court should consider "the needs of the case, . . . the parties' resources, . . . and the importance of the proposed discovery in resolving the issues."[8]

We first conclude that, contrary to Maurer's assertions, the trial court did consider the appropriate factors before denying his requested discovery order.  As required by Rule 26, it weighed the relative burdens and benefits to the parties and concluded that Maurer had "been given ample opportunity to discover the information he seeks through less burdensome and expensive ways" such as relying on Alaska Airlines' disclosures or inspecting a similar aircraft in Seattle.  And the court noted that, while Maurer had not adequately explained why these alternatives were inadequate, Alaska Airlines had shown that Maurer's request "would cause unnecessary expense and air-travel safety concerns."  The court  therefore took into account the needs of the case and the parties' resources in determining that "the burden or expense of the proposed discovery outweigh[ed] its likely benefit."[9]  In doing so, the court did not abuse its discretion to manage discovery.

Maurer also argues that he should have been given access to an airline service cart independently of the airplane itself.  But Maurer did not ask the court to compel separate access to a cart until the first day of trial, long after the close of discovery.  We conclude that the court did not abuse its discretion by failing to order discovery that Maurer did not timely request.

---

[7]     Alaska R. Civ. P.  26(b)(2)(A).

[8]     *Id.*

[9]     *Id.*; *Prentzel*, 169 P.3d at 594.

**B.     The Court Did Not Err By Excluding Evidence At Trial.**

We review evidentiary decisions for abuse of discretion,[10] and we reverse an erroneous decision only "if it affected the substantial rights of a party."[11]  Maurer argues that the trial court erred by excluding several pieces of evidence proffered at trial, but we conclude that the court did not abuse its broad discretion in managing the admission of evidence.[12]

**1.     Exemplar cart**

Maurer asserts that the court erred by repeatedly refusing to admit his exemplar service cart, arguing that he was more prejudiced by the jury's inability to examine a physical cart than Alaska Airlines would have been by its introduction.  We disagree.

Relevant evidence may be excluded under Alaska Evidence Rule 403 "if its probative value is outweighed by the danger of unfair prejudice, . . . misleading the jury, or . . . needless presentation of cumulative evidence"; the trial court has "broad discretion in applying this balancing test."[13]  As the court repeatedly explained, it excluded the cart because Maurer failed to establish its degree of similarity to the service cart at issue, and the jury could have easily been misled into assuming the two carts were identical.  And although a physical cart might have been helpful to the jury, Maurer introduced and had admitted a diagram and photo of an Alaska Airlines cart.  The availability of this evidence reduced the probative value of the exemplar cart.  We

---

[10]     *Barton v. N. Slope Borough Sch. Dist.*, 268 P.3d 346, 349 (Alaska 2012).

[11]     *Cooper v. Thompson*, 353 P.3d 782, 786 (Alaska 2015).

[12]     *See id.* at 789 (recognizing trial court's "broad discretion" in weighing admissibility under Alaska Evidence Rule 403).

[13]     *Id.* (quoting Alaska R. Evid. 403).

therefore conclude that the trial court did not abuse its discretion by finding that the cart's probative value was outweighed by the risk of misleading or confusing the jury.

### 2. Dr. Lucas

Maurer next challenges the court's decision to bar his chiropractor from testifying about the cause of Maurer's symptoms. Maurer argues that Dr. Lucas should have been permitted to discuss causation based on his experience as Maurer's treating physician and that exclusion of this testimony was therefore an abuse of discretion.

But Dr. Lucas did not diagnose Maurer's cubital tunnel syndrome, and relied primarily on other physicians' and Maurer's own statements when forming his conclusions. His testimony on causation thus would have been cumulative of the other treating physicians' testimony and Maurer's own description of the injury, which the jury did hear. Moreover, Dr. Lucas's testimony would have related primarily to injury and causation, and the jury did not reach these issues. No significant prejudice could have resulted from the court's exclusion of this testimony, and we will not reverse a trial court's evidentiary ruling where it did not have "a substantial influence on the verdict."[14]

### 3. Safety training

Maurer objects to the court's refusal to admit testimony about his "safety training and injury reporting training on the slope to explain why he reported the injury in the way that he did." He argues that this evidence was relevant to counter the flight attendant's characterization of him as an opportunist seeking compensation. But the tenor of Maurer's accident report and the flight attendant's perception of it are collateral

---

[14] *Schofield v. City of St. Paul*, 238 P.3d 603, 608 (Alaska 2010) (quoting *Noffke v. Perez*, 178 P.3d 1141, 1148 (Alaska 2008)); *see also Nome 2000 v. Fagerstrom*, 799 P.2d 304, 312 (Alaska 1990) (concluding evidence was not essential to party's case and "if an error was committed by exclusion it was harmless").

matters, and otherwise irrelevant evidence offered in response to them is generally inadmissible.[15] It was well within the trial court's discretion to exclude evidence of Maurer's safety training as irrelevant.

### 4. Liability insurance and claim handling

Maurer also challenges the court's exclusion of his testimony that he was told to pursue a workers' compensation claim by a representative of Alaska Airlines' insurer. He now argues that it was evidence that he was injured on the flight and that he should have been allowed to ask the insurer about Alaska Airlines' investigation into the claim. But he did not make this argument when the parties agreed to exclude all evidence of Alaska Airlines' insurance nor at trial when asked to explain the testimony's relevance. This is an issue of little probative value that threatened to confuse the jury and unfairly prejudice Alaska Airlines.[16] The trial court did not abuse its discretion by excluding Maurer's testimony on the issue.

### 5. Dr. McNamara's encounter with a cart

Maurer finally argues that Dr. McNamara's description of being struck by an airplane cart himself was of significant probative value because it "support[ed] his anatomical understanding of the mechanism of injury" and that the trial court therefore erred by excluding it. But Dr. McNamara's deposition testimony was non-responsive and of little probative value, and the account of a separate incident could well have

---

[15] *See Snyder v. Foote*, 822 P.2d 1353, 1357 (Alaska 1991) (explaining that "evidence which is offered to contradict a collateral matter is inadmissible" (quoting *Shane v. Rhines*, 672 P.2d 895, 898 n.2 (Alaska 1983))).

[16] *See* Alaska R. Evid. 403 (balancing probative value against prejudice and risk of confusing jury).

confused the jury.[17]  Excluding the testimony as irrelevant was not an abuse of the trial court's discretion.

### C.    Allowing Dr. Brooks To Discuss Dr. McNamara's Deposition Was Not An Abuse Of Discretion.

During Dr. Brooks's testimony, Alaska Airlines asked several questions generally inquiring whether he agreed with specific portions of Dr. McNamara's deposition.  Maurer argues that this testimony went beyond the scope of Dr. Brooks's expert report in violation of Civil Rule 26[18] and that it was an unfair and prejudicial surprise to "bolster" Dr. Brooks's testimony with apparently favorable portions of Dr. McNamara's deposition.  He asserts that the trial court erred by allowing this line of questioning.

We review such evidentiary decisions for abuse of discretion, reversing only if an error "affected the substantial rights of a party."[19]  We conclude that allowing Dr. Brooks to discuss Dr. McNamara's deposition was not an abuse of discretion and that in any event Maurer could not have been substantially prejudiced by the testimony. Maurer took the deposition and was familiar with its contents.  He presented the deposition during his case in chief.  And Maurer had the opportunity to cross-examine Dr. Brooks on his responses and identify points on which the doctors disagreed.  The procedure would have been unobjectionable had Dr. McNamara testified in person and

---

[17]    *See id.*

[18]    Under Civil Rule 26(a)(2)(B), an expert witness must submit a report including "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions."

[19]    *Cooper v. Thompson*, 353 P.3d 782, 786 (Alaska 2015).

Dr. Brooks been allowed to respond;[20] we see no reason to disallow it here. This evidence was not a surprise and caused Maurer no substantial prejudice.

### D. The Trial Court Did Not Abuse Its Discretion By Rejecting Maurer's Rebuttal Evidence.

Maurer argues that the court erred by refusing to allow rebuttal testimony on the subject of his seatbelt extender and the deposition of Dr. Craven. He claims that he could not have anticipated, and was surprised by, Alaska Airlines' suggestion that he may have brought in his own seatbelt extender and its apparently last-minute decision not to play Dr. Craven's deposition, parts of which Maurer had counter-designated but not included in his case-in-chief.

"The focus of rebuttal is to respond to new points or material first introduced by the opposing party."[21] Evidence needed to prove a prima facie case should generally be presented in the plaintiff's case-in-chief.[22] The order of proof and whether evidence is proper for rebuttal lie "within the trial court's sound discretion,"[23] and the court may consider "whether the testimony sought to be rebutted could reasonably have been anticipated prior to trial."[24] We conclude that the trial court did not abuse its discretion[25] by refusing to admit Maurer's proposed rebuttal evidence, which could have

---

[20]   *See Steward v. State*, 322 P.3d 860, 865 (Alaska 2014) (stating that expert witness should have been allowed to hear opposing witness's testimony "and finalize any opinions" in response to opposing witness's conclusions).

[21]   *Sirotiak v. H.C. Price Co.*, 758 P.2d 1271, 1277 (Alaska 1988).

[22]   *Id.*

[23]   *Id.*

[24]   *Id.* at 1278.

[25]   *Alaska Airlines, Inc. v. Sweat*, 568 P.2d 916, 932 (Alaska 1977) (reviewing
(continued...)

been presented in his case-in-chief and did not rebut anything material.

### 1. The seatbelt extender

An Alaska Airlines flight attendant testified that passengers sitting in exit rows, as Maurer was, may not use seatbelt extenders and that as a matter of policy flight attendants would never give those passengers extenders. He added that passengers sometimes ask for seatbelt extenders before reaching their seats and that "people will bring their own seat belt extenders on the airplane ahead of time."

Maurer sought to provide rebuttal testimony reiterating that he had been seated in the exit row when he asked for and was given an extender, explaining that he had not anticipated testimony suggesting otherwise. The court rejected his request as "not necessarily rebutting anything." Maurer now argues that his testimony would rebut Alaska Airlines' implication "that its flight attendants were not negligent because they had standard procedures and routine practices" and could be trusted to follow those procedures when pushing carts.

We conclude that the court did not abuse its discretion by refusing rebuttal on a collateral issue.[26] We also note that this testimony was proposed for an improper purpose: to suggest that because Alaska Airlines was negligent in providing a belt extender it was also negligent in maneuvering service carts.[27]

---

[25] (...continued) decision not to allow rebuttal for abuse of discretion).

[26] *See* Alaska R. Civ. P. 46(c) (limiting scope of rebuttal evidence); *Sweat*, 568 P.2d at 932 (trial court did not abuse discretion by barring rebuttal on a collateral issue).

[27] Alaska R. Evid. 404(b)(1) ("Evidence of other . . . acts is not admissible if the sole purpose . . . is to prove the character of a person in order to show that the person acted in conformity therewith."). Maurer claims he was merely trying to rebut the

(continued...)

## 2.    Dr. Craven

Maurer also sought to introduce portions of Dr. Craven's depositions as rebuttal, which he portrayed as supporting that the cart incident caused his injury.  He had counter-designated the testimony but neither played it during his case-in-chief nor included Dr. Craven on his own witness list.  The trial court again rejected the proposed rebuttal as "not rebutting anything. . . .  [I]t's essentially restating . . . many of the questions and answers" from Maurer's other experts.  Maurer claims to have been surprised and prejudiced by Alaska Airlines' decision not to use the deposition during its presentation; he argues that he could not have anticipated this change, making it appropriate rebuttal testimony.

Rebuttal evidence should "not merely contradict or corroborate evidence already presented, instead it should be evidence in denial of some affirmative fact . . . ."[28] It should "respond to new points or material first introduced by the opposing party."[29] Alaska Airlines did not introduce any new points or material by deciding not to play Dr. Craven's deposition.  Maurer was familiar with the deposition and could have included it in his case-in-chief had he believed it necessary.[30]  The court's refusal to

---

[27]     (...continued)
improper implication from Alaska Airlines' evidence about seatbelt extenders — that because flight attendants would have followed the seatbelt extender policy, they also would have followed the cart-pushing procedures.  But Maurer made no objection or request for a limiting instruction when Alaska Airlines elicited this testimony.

[28]     *Sirotiak*, 758 P.2d at1277.

[29]     *Id.*

[30]     *See id.* at 1278-79 (explaining plaintiff's case-in-chief should include "evidence which is necessary to prove a prima facie case" and "may not ignore known defense theories," and affirming exclusion of rebuttal evidence where the testimony in

(continued...)

allow the deposition as rebuttal was not an abuse of discretion, particularly as the portions to be introduced were largely cumulative of previous medical testimony.

**E.  The Court Did Not Err By Rejecting Maurer's Proposed Jury Instructions.**

We review jury instructions de novo, but will reverse a court's erroneous failure to give an instruction only if it caused prejudice.[31]  To evaluate whether there has been prejudicial error, we place ourselves in the jurors' position and "determine whether the error probably affected their judgment."[32]  Maurer argues he was prejudiced by the court's failure to instruct the jury on spoliation and corporate knowledge and its rejection of his instruction on workers' compensation claims.

**1.  Spoliation**

Maurer requested a jury instruction on spoliation related to Alaska Airlines' failure to produce the photograph of his injured arm.  The picture was taken by an airline employee and emailed to her supervisor, but Alaska Airlines was subsequently unable to locate the picture.  Maurer argues that the airline had a duty to preserve the photograph and to automatically disclose it and that its failure to do so warranted a spoliation instruction.  The court rejected the instruction.

To merit a spoliation instruction, a plaintiff must demonstrate two elements: first, that "the absence of the records hinders his ability to establish a prima facie case," and second, that the "records are missing through the negligence or fault of the adverse

---

[30]  (...continued)
question "could reasonably have been anticipated prior to trial").

[31]  *Lindbo v. Colaska, Inc.*, 414 P.3d 646, 650 (Alaska 2018).

[32]  *Reich v. Cominco Alaska, Inc.*, 56 P.3d 18, 25 (Alaska 2002) (quoting *Cable v. Shefchik*, 985 P.2d 474, 479 (Alaska 1999)).

party," which had a duty to preserve the evidence.[33] If both elements are shown, "the party who might have benefitted from the missing evidence is entitled to a rebuttable presumption that the missing evidence would support its case."[34]

But a spoliation instruction is not appropriate when the opposing party has not hindered the other party's ability to present its case, such as when both parties have equal access to the evidence in question.[35] Here Maurer could have taken a picture of his arm just as easily as Alaska Airlines did. Regardless of whether the company had a duty to preserve the photograph, its failure to do so did not interfere with Maurer's ability to establish his case. And although a picture may have been more compelling than Maurer's own statements, he was able to present near-contemporaneous medical records, reports, and testimony from multiple sources who observed his injured arm. The photograph would have been largely cumulative of this evidence.

We conclude that the trial court did not err in rejecting Maurer's proposed spoliation instruction. Because Maurer requested the corporate-knowledge instruction to support the spoliation instruction,[36] the proposed corporate-knowledge instruction was

---

[33] *Todeschi v. Sumitomo Metal Mining Pogo, LLC*, 394 P.3d 562, 574 (Alaska 2017) (quoting *Sweet v. Sisters of Providence in Wash.*, 895 P.2d 484, 491 (Alaska 1995)).

[34] *Id.*

[35] *See Doubleday v. State, Com. Fisheries Entry Comm'n*, 238 P.3d 100, 106 (Alaska 2010) (rejecting spoliation instruction in part because defendant's actions did not prevent plaintiff from acquiring federal records directly from the federal government).

[36] At trial Maurer advocated for the corporate-knowledge instruction by claiming it would have attributed the spoliation of the photograph to Alaska Airlines. On appeal Maurer additionally argues that the corporate-knowledge instruction would have established Alaska Airlines' awareness of its safety report's statement about

(continued...)

also unnecessary.

### 2. Workers' compensation

Maurer also argues that he was prejudiced by the trial court's failure to give his preferred instruction on workers' compensation recovery and that the court's instructions "did not go far enough" to convince the jury that he could not collect a double recovery.[37]

Our review of a rejected jury instruction focuses on whether the instructions as given "adequately inform[ed] the jury of the relevant law."[38] The court's instruction properly told the jury not to consider any possible workers' compensation benefits that Maurer may have received. Moreover, Maurer fails to show prejudice; the jury never reached the issue of damages, and the potential of a double recovery by Maurer is unrelated to negligence, the only issue the jury addressed. We conclude that by giving its own workers' compensation instruction, the trial court did not commit reversible error.[39]

### F. The Court Did Not Err By Refusing To Postpone Jury Deliberation.

Maurer also argues that the court's refusal to postpone deliberations until

---

[36]   (...continued)
passengers being struck by carts four times per month. But as Maurer did not make this argument to the trial court, we consider it waived. *See Wells v. Barile*, 358 P.3d 583, 589 & n.17 (Alaska 2015) (considering arguments first raised on appeal waived).

[37]   *See* AS 23.30.015(g) ("If the employee . . . recovers damages from the third person, the employee . . . shall promptly pay to the employer the total amounts paid by the employer . . . .").

[38]   *Kavorkian v. Tommy's Elbow Room, Inc.*, 694 P.2d 160, 166 (Alaska 1985), *modified on other grounds*, 711 P.2d 521 (Alaska 1985).

[39]   *Lindbo v. Colaska, Inc.*, 414 P.3d 646, 650 (Alaska 2018) (refusal to give jury instruction can be reversible error only if appellant establishes prejudice).

after a three-day weekend created a "pressure to reach a quick verdict," influencing the jury to find no negligence so as to avoid further questions of causation or damages. He claims that the court therefore erred by not sending the jury home and reconvening the next week as originally planned.

We have previously "decline[d] to hold, absent specific allegations of juror misconduct, that a two-hour deliberation is too short to result in a valid verdict."[40] Jurors are presumed to follow the court's instructions;[41] here, they were told to decide the verdict only once they "fully considered the evidence, discussed it with the other jurors, and listen[ed] to their views." Without evidence, or even an allegation, of specific juror misconduct, we see no reason to overturn the jury's verdict, and we conclude that the court did not abuse its discretion by refusing to postpone deliberations.[42]

## G. Denying The Motion For A New Trial Was Not Abuse Of Discretion.

Finally Maurer argues that the court should have granted a new trial due to the trial court's allegedly biased and unfair behavior.[43] But Maurer does not point to any

---

[40]     *Pralle v. Milwicz*, 324 P.3d 286, 289 (Alaska 2014).

[41]     *Id.*

[42]     *See Powercorp Alaska, LLC v. Alaska Energy Auth.*, 290 P.3d 1173, 1181 (Alaska 2012) ("We generally review procedural decisions of the superior court for abuse of discretion."); *see also Merrill v. Faltin*, 430 P.2d 913, 918 (Alaska 1967) (stating trial courts have discretion to strictly apply or relax rule on conduct of trial under Alaska Civil Rule 94); Alaska R. Civ. P. 48(b) ("When argument of counsel is concluded or waived, the court shall then charge the jury."), (f) ("After hearing the charge the jury shall retire for deliberation.").

[43]     Maurer also cites preclusion of evidence at trial and the court's refusal to instruct the jury on spoliation as bases for a new trial. Because we have determined that the court did not err on these points, we necessarily conclude that it did not err in refusing to grant a new trial on these grounds.

specific instances of judicial bias or unfair time constraints, and we conclude that the court did not abuse its discretion in denying his request for a new trial.

A court has the discretion to grant a new trial if required in the interests of justice;[44] the party seeking a new trial bears the burden of proof, and the evidence is viewed in the light most favorable to the nonmoving party.[45] Here, Maurer claims that he was prejudiced by the court "demeaning his counsel and imposing unfair time restrictions." But Maurer does not identify any examples of the court "demeaning his counsel," instead arguing generally that the trial judge's alleged dislike of his lead attorney impaired the presentation of his case. Maurer's claim of "unfair time restrictions" is similarly vague. Maurer did not show that a new trial was warranted, and thus the trial court did not abuse its discretion in refusing to grant one.

## IV. CONCLUSION

We AFFIRM the superior court's judgment.

---

[44] Alaska R. Civ. P. 59(a). This decision is reviewed for abuse of discretion. *Lindbo*, 414 P.3d at 651.

[45] *Marron v. Stromstad*, 123 P.3d 992, 1011 (Alaska 2005).